**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re *Ex Parte* Application of N.P.S.SF. Debt Co., S.à.r.l., pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings,<br><br>　　　　　　　Petitioner. | Misc. Case No. M-_____ |

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212-589-4200
Facsimile: 212-589-4201

# **TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| BACKGROUND | | 1 |
| ARGUMENT | | 5 |
| I. | PETITIONER SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782 | 6 |
| II. | THE COURT SHOULD GRANT THE PROPOSED DISCOVERY ORDER | 7 |
| III. | THE COURT SHOULD GRANT PETITIONER'S APPLICATION *EX PARTE* | 9 |
| CONCLUSION | | 10 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
   785 F. Supp. 2d 434 (S.D.N.Y. 2011)...............................................................................9

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
   No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)..................8

*In re Application of Gorsoan Ltd. and Gazprombank OJSC for an Order Pursuant
   to 28 U.S.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding*,
   No. 13 Misc. 397(PGG), 2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014)...................9

*In re Application of Hill*,
   M19-117, 2005 WL 1330769 (S.D.N.Y. June 3, 2005)..............................................7

*In re Application of Hornbeam Corp.*,
   No. 14 Misc. 424, 2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014) .........................8, 9

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012)..............................................................................................6, 7

*In re Chevron Corp.*,
   No. 10-mc-00002 (LAK) (S.D.N.Y. Aug. 6, 2010)......................................................9

*Euromepa S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995)..............................................................................................8

*In re Ex Parte Application of Porsche Automobil Holding SE for an Order
   Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in
   Foreign Proceedings*, 15-mc-417 (LAK), 2016 WL 702327 (S.D.N.Y. Feb.
   18, 2016) ..........................................................................................................................9

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004).........................................................................................................7, 8

*Lancaster Factoring Co. Ltd. v. Mangone*,
   90 F.3d 38 (2d Cir. 1996)..................................................................................................5

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
   376 F.3d 79 (2d Cir. 2004)................................................................................................7

**Statutes**

28 U.S.C. § 1782............................................................................................................ *passim*

Petitioner, N.P.S.SF. Debt Co., S.à.r.l., ("Njord Lux" or "Petitioner"), a Luxembourg-registered entity, respectfully submits this memorandum of law, and the accompanying Declaration of Arvid Trolle dated August 8, 2022 ("Decl."), in support of its application for an order, pursuant to 28 U.S.C. § 1782, to conduct discovery for use in aid of a foreign proceeding by serving a subpoena on each of Standard Chartered Bank, Citigroup d/b/a Citibank, The Bank of New York Mellon Corporation, Bank of America, N.A., JPMorgan Chase Bank, N.A., Deutsche Bank AG, Deutsche Bank Trust Company Americas, HSBC Bank, Societe Generale, UniCredit Bank AG, Credit Suisse Bank N.A., UBS Group AG, Wells Fargo Bank, N.A., The Clearing House Payments Company L.L.C., Bank of China, BNP Paribas USA, Commerzbank AG, Mashreq Bank PSC, and Habib American Bank (together, the "US Banks").

## BACKGROUND

The Parties

Petitioner is an entity within Njord Partners LLP ("Njord Partners"). (Decl. ¶ 3.) Njord Partners, a Limited Liability Partnership regulated by the UK Financial Conduct Authority, acts as investment manager and advisor to a network of entities through which it invests funds and engages in financing and investment activities on behalf of institutional investors. (*Id.*) These include: Guernsey-registered entity Njord Partners SMA-SEAL LP ("Njord LP") and its subsidiaries and a group of Luxembourg-registered entities including Njord Partners Special Situations Fund II SLP (SCSP) ("Njord Lux II") and N.P.S.SF Debt Co S.à.r.l ("Njord Lux") its subsidiary, collectively referred to herein as the "Njord Companies." (*Id.*)

Muhammad Tahir Lakhani ("Tahir") claims to work in the shipping and maritime transport industry and to purchase unseaworthy ships and resell them to scrapping companies specialized in recycling ship steel for a profit. (*Id.* ¶ 5.) Tahir purported to transact this business through North Star Maritime Holdings Limited ("North Star"), which is a parent company to

Astir Maritime Limited ("Astir"), which in turn owns 100% of four Astir subsidiary companies ("Astir Subsidiaries" and, collectively with Astir and North Star, the "Astir Group"). (*Id.* ¶ 6.) Muhammad Ali Lakhani ("Ali") and Muhammad Hasan Lakhani ("Hasan"), Tahir's two sons, are the beneficial owners of North Star, each holding 50% of the share capital. (*Id.* ¶ 7.) Ali is a director of North Star and of Astir. (*Id.*) Although Tahir has no formal title with North Star and Astir, he was closely involved in the day-to-day management of both companies and was the Njord Companies' main point of contact. (*Id.*)

The Fraud

In 2016, Tahir approached Njord Partners and proposed an investment in a project whereby unseaworthy ships would be purchased and then scrapped. (*Id.* ¶ 4.) The Njord Companies decided to invest in Tahir's project and, in 2017, the Njord Companies entered into three agreements with Astir and North Star, among others (the "Facility Agreements"). (*Id.* ¶ 8.) The Facility Agreements detailed the terms by which the Njord Companies would invest with the Astir Group funds to purchase vessels, including that:

a. The funds were transferred by SMA Orion to designated funding accounts held by Astir Group members with UniCredit Bank AG in Hamburg, Germany ("UniCredit Accounts").

b. The Astir Group was to identify a vessel to purchase.

c. An Approved Borrower Statement had to be completed representing that all transactions under the Facility Agreements were permitted transactions and that there was no default in repayment on prior transactions.

    d.   The Astir Group was then permitted to withdraw the funds equivalent to the purchase price of the vessel to purchase the vessel and move those funds to a transaction account.

    e.   The Astir Group was to then sell the end-of-life vessel to the scrapyard.

    f.   Within 5 days of an Astir Group member receiving the proceeds of the sale of the vessel to the scrapyard, that Astir entity was to deposit the principal back into the designated funding account. Receipt of proceeds of a sale usually coincide with the delivery of the vessel to the scrapyard buying the vessel.

(*Id.* ¶ 9.) Through these Facility Agreements, the Njord Companies invested $45 million with the Astir Group to facilitate the Astir Group's purchase of unseaworthy vessels to be sold to the scrapyard. (*Id.* ¶ 10.) The Njord Companies entered into these Facility Agreements in reliance on what now appear to be a series of false and deceitful statements made to the Njord Companies by Ali and Tahir concerning Tahir's net worth, including that Tahir claimed to be the owner of those assets which now he disavows, used those assets in a way that he did not, and that the value of those assets was materially different from the value provided in the statement. (*Id.* ¶ 11.)

    Over the course of nearly three years, from 2017-2020, the Astir Group identified 23 vessels to purchase and sell to the scrapyard and the Njord Companies permitted the Astir Group to withdraw a total of $45 million from the UniCredit Account. (*Id.* ¶¶ 14, 15.) The Astir Group was then expected to purchase a vessel, sell the vessel to a scrapyard, and then deposit the profits and principal into the account within five days of delivery of the vessel to the scrapyard. (*Id.* ¶ 16.) In reality, the Astir Group did not purchase and sell the vessels, but rotated the funds provided to them by the Njord Companies into and out of the UniCredit Accounts as part of a

scheme. (*Id.* ¶¶ 17-19.) In fact, some of the vessels continued to be in service long after the Astir Group claimed to have purchased the vessel and sold it to the scrapyard. (*Id.* ¶ 20.) In other instances, the relevant vessels had already been scrapped and broken up, but Tahir represented to the Njord Companies that these vessels had been delayed in their delivery to the scrapyard, and thus the Astir Group's obligation of repayment was also delayed. (*Id.*¶¶ 21-22.) Thus, the transactional activity of withdrawals and deposits in the UniCredit Accounts did not reflect the repayment of principal or sales. (*Id.* ¶ 23.) In some instances, the Astir Group failed to return the principal withdrawn altogether. (*Id.*) Instead, the Astir Group transferred the funds to various bank accounts believed to be held by Tahir and his associates around the world, including to banks in the United Arab Emirates, Switzerland, Germany, St. Kitts & Nevis, India, and Pakistan. (*Id.* ¶ 24.) As a result of the Astir Group's, Tahir's and Ali's scheme, the Njord Companies were defrauded of $36,638,599.51. (*Id.* ¶ 25.)

Foreign Proceedings

The Njord Companies have been engaged in seeking to recover the funds of which they were defrauded through legal proceedings. (*Id.* ¶ 26.) In April 2020, certain of the Njord Companies brought a civil claim (Claim No. CL-2020-000211) in the High Court of Justice Business and Property Courts of England and Wales (the "High Court"), against Astir, Tahir and Ali.  (*Id.* ¶ 27.) On July 3, 2020, the High Court entered judgment against Tahir as the personal guarantor on the claim brought by the Trustee, acting on behalf of the Njord Companies, in the amount of US$47,297,812.73 for failure to repay the principal amounts invested and obligations of the Astir Group. (*Id.*)

The Njord Companies have been engaged in tracing Tahir's, Ali's, and the Astir Group's assets around the world so that they may bring enforcement proceedings and recover those assets.

(*Id.* ¶ 28.) As a result, they have learned that Tahir and Ali are continuing to transact business as a buyer or broker of vessels for recycling and may be doing so with the funds stolen from the Njord Companies. (*Id.*) Further inquiry into Tahir's, Ali's and the Astir Group's assets indicates that Tahir may be using a network of offshore entities that transact business in U.S. dollars to arrange for the buying and selling of these vessels. (*Id.* ¶ 29.) As a result of this investigation, the Njord Companies are contemplating initiating and/or participating in pending proceedings in the United Arab Emirates, India, and Pakistan with respect to vessels connected to Tahir, and in Germany, St. Kitts & Nevis, and the Marshall Islands where certain of the Astir Group are either located in or believed to have business and assets. (*Id.* ¶¶ 30-31.)

## ARGUMENT

Section 1782 of Title 28 of the United States Code permits the United States District Courts to grant discovery for use in a foreign proceeding. The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person . . . .

28 U.S.C. § 1782. The goals of this statute are twofold: "to provide equitable and efficacious discovery procedures in the United States courts for the benefit of tribunals and litigants involved in litigation with international aspects . . . and to encourage foreign countries . . . to provide similar means of assistance to [United States] courts." *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996) (internal quotations and citations omitted). "In pursuit of these twin goals, the section has, over the years, been given increasingly broad applicability." *Id.* (internal quotations and citations omitted).

When a court finds that the statutory requirements of 28 U.S.C. § 1782 are met, it may, in its discretion, grant an application for discovery. The United States Supreme Court has

articulated a number of factors the district courts should consider when weighing an application under Section 1782. As set forth in greater detail below, all of these discretionary factors weigh in favor of granting Petitioner the requested discovery.

### I. PETITIONER SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

Courts are authorized to grant an application made pursuant to 28 U.S.C. § 1782 where "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. 1KB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). Petitioner's application satisfies all three statutory requirements.

**First**, each of the US Banks resides or is found in this District. (Decl. at ¶ 22.) Petitioner seeks records that should be held in each of the US Banks' ordinary course of business and which each of the US Banks should be able to easily produce in this District.

**Second**, the discovery sought is for use in contemplated foreign proceedings. From the Njord Companies' investigation to date, it has determined that Ali, Tahir, and the Astir Group used a number of front companies to transfer funds and perpetuate their fraudulent scheme. (Decl. ¶ 32.) Njord Lux seeks the assistance of this Court to obtain financial records of transactions relating to Ali, Tahir, the Astir Group, and their agents, and/or their traceable proceeds. (*Id.* ¶ 33.) As the fraud against the Njord Companies was perpetrated by Tahir, Ali and the Astir Group by means of transactions in U.S. dollars, and as vessel recycling transactions in general are almost always conducted in U.S. dollars, Njord Lux seeks documentary discovery of correspondent banking records, comprising detailed SWIFT and other transaction data for transactions made to or from the Astir Group's, Tahir's, or Ali's own accounts and known or

suspected accounts held by relevant recipients of their funds (or their traceable proceeds). (*Id.* ¶ 34.) Njord Lux seeks this discovery to support and provide evidence for its contemplated claims against Ali, Tahir, the Astir Group, and their related agents and entities, to pursue its claims of enforcement and recovery of assets in the jurisdictions in which Ali, Tahir, and the Astir Group have sought to conceal the funds stolen from the Njord Companies as part of the fraudulent scheme. (*Id.* ¶ 36); *see, e.g.*, *In re Application of Hill*, No. M19-117 (RJH), 2005 WL 1330769, at *5 (S.D.N.Y. June 3, 2005) (to demonstrate that the discovery is for use in the foreign proceeding, the petitioner must show that the "requested information [is] sufficiently related to the pending" proceeding).

**Third**, Petitioner is an "interested person" authorized to bring this application, as it is one of the entities through which Njord Partners invests its funds and engages in financing and investment activities and was one of the entities defrauded by Tahir and the Astir Group. (Decl. ¶¶ 1, 3, 14-25); *see Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004).

II.     **THE COURT SHOULD GRANT THE PROPOSED DISCOVERY ORDER**

"Once the statutory requirements [of 28 U.S.C. § 1782] are met, a district court is free to grant discovery in its discretion." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004) (internal quotations and citation omitted). The Supreme Court has identified a number of factors that the district courts are to consider in ruling on a § 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign court to federal-court assistance; (3) whether the application conceals an attempt to circumvent foreign proof gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome. *See Intel Corp.*, 542 U.S. at 264-65;

*Brandi-Dohrn*, 673 F.3d at 80-81. Here, all of these factors weigh in favor of granting Petitioner's application.

First, where, as here, discovery is sought from entities that are not participating in the foreign proceeding, the need for court-ordered discovery is apparent. As the Supreme Court explained, "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. By contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel Corp.*, 542 U.S. at 264 (internal citations omitted).

The second factor identified by the Supreme Court—the nature of the foreign proceedings and the receptivity of the foreign tribunal to federal-court assistance—requires courts to consider "(1) whether United States assistance would offend the foreign country, and (2) whether the material sought is admissible in the foreign tribunal." *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) (internal citations omitted). In weighing these elements, courts may only rely on "authoritative proof." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). Here, this factor is immaterial as Petitioner is continuing to trace the Njord Companies' stolen proceeds and identify the entities and jurisdictions in which these proceeds are concealed, and a proceeding has not yet been initiated in a foreign tribunal.

Following from this, the third factor also suggests that discovery should be granted, as this application is clearly not an attempt to circumvent any foreign proof gathering restrictions. "[T]he burden is on the opponent of a § 1782 request to prove that the foreign court would reject the evidence obtained through § 1782." *In re Application of Hornbeam Corp.*, No. 14 Misc. 424,

8

2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014); *see also Euromepa*, 51 F.3d at 1099-1100 ("[W]e believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782."). The discovery sought here specifically pertains to tracing the Petitioner's stolen assets, and in this instance, the rules of evidence for a specific jurisdiction are not implicated, nor is it anticipated that it would violate any restrictions on evidence gathering.

Finally, this application is not burdensome. Bank records are routinely sought for and produced via § 1782 petitions. *See, e.g., Hornbeam Corp.*, 2014 WL 8775453, at *5 (ordering production of bank records, including wire transfers, pursuant to § 1782); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 437-39 (S.D.N.Y. 2011) (granting § 1782 petition seeking disclosure of account statements, account opening materials, customer files, and due diligence materials).

### III. THE COURT SHOULD GRANT PETITIONER'S APPLICATION *EX PARTE*

The Court should grant Petitioner's application *ex parte*. *Ex parte* applications under 28 U.S.C. § 1782 are routine in this district. *See In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*, 15-mc-417 (LAK), 2016 WL 702327, at *5 (S.D.N.Y. Feb. 18, 2016); *In re Application of Gorsoan Ltd. and Gazprombank OJSC for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 13 Misc. 397(PGG), 2014 WL 7232262, at *5 (S.D.N.Y. Dec. 10, 2014). As noted by Judge Kaplan:

> Applications pursuant to 28 U.S.C. § 1782 are frequently granted *ex parte.* Where, as here, the application is for the issuance of subpoenas, no substantial rights of the subpoenaed person are implicated by such action, as the subpoenaed person, once served, is entitled to move to quash or modify the subpoenas.

*In re Chevron Corp.*, No. 10-mc-00002 (LAK) (S.D.N.Y. Aug. 6, 2010) (Dkt. 2). The US Banks will not be prejudiced by granting Petitioner's application *ex parte* as they will have an opportunity to challenge the discovery Petitioner seeks once it is served.

## **CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests that the Court endorse the Proposed Order filed with the *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings ("Application") and to serve the subpoenas annexed to the Application as Exhibits A-S.

Dated: August 9, 2022
      New York, New York

**BAKER & HOSTETLER LLP**

*/s/ Oren J. Warshavsky*
Oren J. Warshavsky
owarshavsky@bakerlaw.com
Michelle R. Usitalo
musitalo@bakerlaw.com
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212-589-4200
Facsimile: 212-589-4201